931 F.2d 887
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Daniel L. SINGLETON, Sandra Singleton, Plaintiffs-Appellants,
v.
MANITOWOC COMPANY, INCORPORATED, Defendant-Appellee.
 No. 90-1714.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1991.
Decided April 29, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Paul V. Niemeyer, District Judge. (CA-86-2425-PN)
 Dean Kasian, Goldstein, Hood & Associates, Baltimore, Md. (argued) for appellants.
 Robert Kenneth Nead, O'Doherty, Nead & Hoffman, Baltimore, Md., for appellee. Bertram M. Goldstein, Goldstein, Hood & Associates, Baltimore, Md., on brief.
 D.Md., 727 F.Supp. 217.
 AFFIRMED.
 Before SPROUSE, Circuit Judge, JAMES C. HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal arises from the district court's entry of summary judgment against plaintiff. After suffering injuries at his construction work site in a crane accident, plaintiff brought this action alleging product liability and negligence. There being no error in the determinations of the district court, we affirm.
 
 I.
 
 2
 Plaintiff Singleton was employed as a laborer by Cianbro, Inc., in 1983 when he was instructed to place some tools in a toolbox affixed to the side of a crane manufactured by defendant. As plaintiff did so, he stood in the crane operator's blind spot. The crane operator swung the crane around while plaintiff held the lid of the toolbox open, causing his left hand to become pinched between the lid of the toolbox and the superstructure of the crane. His hand was crushed, and the four fingers of that hand were eventually amputated. Singleton and his wife brought this suit against defendant.
 
 
 3
 Defendant manufactured the crane in question and sold it to Cianbro's predecessor in interest in 1966, some seventeen years before the accident. The crane was originally sold with a small toolbox located in the cab, but the toolbox involved in this accident was subsequently added to the exterior of the crane by Cianbro's predecessor in interest. Apparently, this was a common practice among construction companies, though the size, configuration and location of these toolboxes were not uniform throughout the industry.
 
 
 4
 Prior to this accident, plaintiff had worked for about nine months for Cianbro and about five years for another company in similar employment. Plaintiff also testified in deposition that yellow tape had been strung around the perimeter of the crane to keep persons outside of the area when the crane was in operation. Nevertheless, plaintiff crossed into that area while the crane was in operation to put his tools in the box.
 
 
 5
 The district court granted defendant's motion for summary judgment, holding that plaintiff had established no design defect for a claim of strict liability and that no duty was breached to support a claim of negligence. Further, the district court held that plaintiff was contributorily negligent in his actions. Plaintiff has appealed each of these determinations.
 
 II. Strict Liability
 
 6
 The district court analyzed this aspect of the case under Maryland's statute providing for strict liability which tracks the language of Section 402A of the Restatement (Second) of Torts (1965). In order to survive a motion for summary judgment, plaintiff must show primarily that the product in question was defective at the time of sale and that the product reached plaintiff without substantial change to the condition in which it was sold. See Phipps v. General Motors Corp., 278 Md. 337, 363 A.2d 955 (1976). See also Lee v. Baxter Healthcare Corp., 721 F.Supp. 89, 95 (D.Md.1989) (plaintiff must show that product is defective and that it is the proximate cause of her injury in order to recover under strict liability). Each requirement will be examined in turn.
 
 
 7
 First, a defect is a condition of a product by which it does not conform to recognized standards in the design of the product, recognized standards imposed by society, or consumer expectations. Plaintiff fails to show such a defect at the time of the sale of the crane by defendant. Plaintiff believes that mirrors should have been installed to eliminate blind spots in the operation of these cranes. Both parties agree that no manufacturer has ever installed mirrors for this purpose. Further, in 1966 when the crane was sold, there were no governmental standards which suggested that blind spots could or should be minimized by the installation of mirrors, nor have such standards been adopted to the present day. (JA 452.) The district court also found no evidence that a purchaser of a crane in 1966 expected to have mirrors installed. We see no reason to question these findings by the district court.
 
 
 8
 The second concern here is whether the product reached Cianbro without substantial change to the condition in which it was sold. See Phipps v. General Motors Corp., 278 Md. 337, 363 A.2d 955 (1976). The change in issue is the addition of the toolbox. Plaintiff claims that the addition of the toolbox was an event foreseeable to defendant and that the addition of the toolbox did not make the situation unsafe. Maryland law and the Restatement (Second) of Torts provide that, to escape liability, it must be shown that the change is a material one by which the causative impact of the original defect no longer survives as a substantial cause of the injury. See Banks v. Iron Hustler Corp., 59 Md.App. 408, 475 A.2d 1243 (1984); Restatement (Second) of Torts Sec. 402 A comment p (1965). Clearly, the addition of the toolbox was a substantial change; without it there would have been no accident. However, defendant cannot be held responsible for consumer-made changes, the size, configuration and location of which are not uniform throughout the industry. Even if there had been a defect in the design of the crane, this change is so substantial as to eliminate liability under this theory for defendant. Thus, plaintiff must fail on his strict liability claim as a matter of law.
 
 III. Negligence
 
 9
 Plaintiff's alternative theory of recovery is negligence. Like most states, Maryland's negligence cause of action consists of four parts: a duty requiring certain behavior of an individual, a failure to fulfill that duty, a causative relationship between the parties, and damage of some description must be suffered by the plaintiff. Cramer v. Housing Opportunities Com., 304 Md. 705, 501 A.2d 35 (1985). Plaintiff fails to establish a duty on defendant's part regarding the elimination of blind spots, and the claim of negligence cannot succeed without a showing of duty. Again, the examination must be made as of the time of the design and sale of the product. See Singleton v. International Harvester Co., 685 F.2d 112 (4th Cir.1981). As the district court found regarding strict liability, there was no consumer expectation that the blind spots would be removed in 1966, there were no industry standards, and there were no governmental regulations. These factors have not been established even to the present time. There simply can be no duty to correct a defect which did not exist and no duty to warn of a defect which was not perceived.
 
 
 10
 In its discussion of the negligence issue, the district court also pointed out that there were several superseding intervening causes which would relieve defendant of liability: the addition of the toolbox after the sale of the crane, the passage of seventeen years between the date of sale of the crane and the injury to plaintiff, and the fact that the owner of the crane was in a better position than defendant to warn and provide safety measures to prevent accidents. We agree with the district court. A superseding intervening cause operates to shift liability from the defendant to another party. Factors used to identify superseding intervening causes include the fact that harm other than that which would have resulted from defendant's negligence occurs and the fact that the intervening force is due to a third person's act. Restatement (Second) of Torts Sec. 442 (1965). The attachment of the toolbox is such an intervening force. Again, without it there would have been no accident. The passage of time also intervenes because Cianbro, plaintiff's employer and the owner of the crane, had a duty to inspect and maintain the crane, and further, Cianbro's duty to warn and provide safety measures to prevent accidents during that time also intervenes to relieve defendant of any liability.
 
 
 11
 Finally with regard to negligence, we agree with the district court that the doctrine of the "sophisticated user" applies here. The Maryland courts recognized this doctrine in Eagle-Picher Industries, Inc. v. Balbos, 84 Md.App. 10, 578 A.2d 228 (1990), and applied it in Kennedy v. Mobay Corp., 84 Md.App. 397, 579 A.2d 1191 (1990). This court has also applied this doctrine on several occasions. See Beale v. Hardy, 769 F.2d 213 (4th Cir.1985) (supplier of silica sand has no duty to warn employees of a foundry of the dangers of its product); Oman v. Johns-Manville Corp., 764 F.2d 224 (4th Cir.), cert. denied, 474 U.S. 970 (1985) (product supplier may rely on third party as a conduit of necessary information about its product); Marshall v. H.K. Ferguson Co., 623 F.2d 882 (4th Cir.1980) (manufacturer of a hops conveyor had no duty to warn brewing facility employees of the dangers of its equipment as those employees were at least as knowledgeable as the manufacturer itself); Spangler v. Kranco, Inc., 481 F.2d 373 (4th Cir.1973) (manufacturer had no duty to install warning device on crane when the need for such a device was open and obvious to purchasing company and its personnel). The principle inquiry in the application of the sophisticated user doctrine is whether the manufacturer could reasonably rely on the industrial purchaser to recognize the dangers associated with the product and to inform the users of those dangers. Id. In this case, Cianbro is as knowledgeable as defendant on this subject and perhaps even more knowledgeable of the need for precaution in the use of the crane. Cianbro did in fact string yellow tape around the crane in an effort to prevent injury. Given Cianbro's status as a sophisticated user and the other parts of this analysis, plaintiff's negligence claim must also fail as a matter of law.
 
 IV. Contributory Negligence
 
 12
 The last element of plaintiff's appeal concerns the district court's determination that plaintiff was contributorily negligent in entering the area of the operation of the crane. The district court cites several Maryland authorities for the proposition that a defense of contributory negligence is established where the plaintiff knew of a particular risk and voluntarily, but unreasonably, encountered that risk. See, e.g., Ellsworth v. Sherne Lingerie, Inc., 303 Md. 581, 495 A.2d 348 (1985). Plaintiff in this case had worked around this crane for a period of nine months prior to his accident and was employed in a similar capacity for some five years prior to the accident. Plaintiff also attended safety meetings where he was warned of the danger of standing too close to the cranes while in operation. Finally, plaintiff crossed into the area taped off knowing that this tape was meant to warn of possible danger. Thus, plaintiff knew of the risk and voluntarily encountered it though a reasonably prudent person would not have done so. Plaintiff was contributorily negligent as a matter of law. We discern no error in the district court's entry of summary judgment in favor of defendant.
 
 
 13
 AFFIRMED.