[No. 21802-6-I. Division One. May 15, 1989.]

KARL GUELICH, ET AL, *Appellants,* V. AMERICAN PROTECTION
INSURANCE COMPANY, *Respondent.*

*Marvin L. Gray, Jr., Kathryn E. Cashin,* and *Davis, Wright & Jones,* for appellants.

*Michael Woerner, David F. Hiscock, Gregory A. Nave,* and *Keller, Rohrback, Waldo & Hiscock,* for respondent.

WEBSTER, J.—Karl Guelich appeals a summary judgment dismissal of his suit against his insurer, American Protection Insurance Company (American). Guelich contends that the trial court erroneously concluded that, under the terms of an insurance policy, American had no duty to defend Guelich in a lawsuit.

## FACTS

American issued a policy insuring Guelich against property damage claims which were not otherwise covered by his other insurance policies. The policy (called an "umbrella policy") states: "'Property damage' means physical injury to tangible property. It includes loss of use of injured property." In early 1985, Guelich began building a home on Mercer Island, Washington. Guelich's neighbor sued Guelich on January 31, 1985, claiming that the house being built blocked the neighbor's view. Guelich tendered defense of this lawsuit to American. American refused to defend claiming the policy did not cover this type of action because the complaint did not allege physical injury to tangible property. Guelich retained counsel and defended the suit at his own expense. Guelich ultimately prevailed and obtained a dismissal of the suit with prejudice. Guelich brought this action against American to recover his legal fees and costs incurred in defending his neighbor's suit. Both parties moved for summary judgment. The court ruled in favor of American and dismissed the suit.

## DISCUSSION

Guelich argues that view obstruction constitutes "property damage" as defined in the American policy, therefore imposing a duty on the insurance company to defend him in his neighbor's suit. The trial court granted summary judgment in favor of American and found that the view obstruction suit was not the type of claim covered by the American policy. The facts are not in dispute; on appeal, this court must determine whether as a matter of law American is entitled to judgment. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

 If the view obstruction suit constitutes a claim for "property damage" then American has a duty to defend Guelich. A duty to defend arises when the complaint is filed, and is to be determined by the allegations contained in the complaint. *Prudential Property & Cas. Ins. Co. v. Lawrence,* 45 Wn. App. 111, 114, 724 P.2d 418 (1986). In

order to find a duty to defend, the court must examine "'whether the facts alleged in the complaint, if proved, would render the insurer liable under the policy.'" *Prudential,* at 114–15 (quoting *Transamerica Ins. Co. v. Preston,* 30 Wn. App. 101, 103, 632 P.2d 900 (1981)).

In his complaint, Guelich's neighbor alleged that Guelich had violated applicable zoning restrictions, the Shoreline Management Act of 1971, and certain restrictive covenants by building the Mercer Island home. The complaint alleged that Guelich's construction of the home resulted in denying the neighbor the reasonable use and enjoyment of his view.

In *Prudential Property & Cas. Ins. Co. v. Lawrence, supra,* this court addressed a similar issue of whether view obstruction constitutes property damage under an insurance policy. In *Prudential,* the court considered two policies, a homeowner's and an "umbrella" policy. The court primarily focused on the umbrella policy which, as the court held, provided broader coverage than the homeowner's policy. *Prudential,* at 117. The umbrella policy defined property damage as "'damage to or destruction of tangible property. "Property damage" also includes the loss of the use of the damaged or destroyed property.'" *Prudential,* at 117. In contrast, the homeowner's policy defined property damage as "'*physical injury* to or destruction of tangible property, including loss of use of this property.'" *Prudential,* at 115. The court emphasized the fact that because the umbrella policy did not use the term "physical injury," it, therefore, provided broader coverage to "encompass damage involving diminution in the value of the property, even when no physical damage has otherwise occurred." *Prudential,* at 117.

■ Here, the American policy contains the limiting term addressed in *Prudential,* "physical injury." *Prudential* provides persuasive authority that this policy language requires a claim to allege physical injury to tangible property so as to give rise to a duty to defend. Here, the neighbor alleged that Guelich's construction resulted in the

neighbor losing the use of his view. This loss does not constitute physical injury to tangible property.

Still, Guelich argues that the policy language and its use of the term "it" in the second sentence is ambiguous. The policy read: "'Property damage' means physical injury to tangible property. *It* includes loss of use of injured property." (Italics ours.) He argues that "it" has more than one possible antecedent in the preceding sentence rendering the definition of property damage susceptible to multiple interpretations. However, a close reading of the definition reveals no such ambiguity. The first sentence provides the general definition: "'Property damage' means physical injury to tangible property." The second sentence clearly relates to the subject of the first, and provides an additional inclusion within the general definition: "It includes loss of use". "It" refers to property damage. In fact, the policy language addressed in *Prudential* discussed above, is nearly identical to that used here, but substitutes "property damage" for the term "it." While American's policy might well have avoided "elegant variation" and simply repeated the subject of the first sentence within the second, the use of the word "*it*" *cannot be construed here as creating an ambiguity.*

Guelich cites two cases to support his construction of American's policy. One case interpreted a property damage definition which read:

> The term "property damage" shall mean physical injury to, or physical destruction of, tangible property, including the loss of use thereof.

*American Home Assur. Co. v. Libbey–Owens–Ford Co.,* 588 F. Supp. 766, 767 (D. Mass. 1984), *rev'd on other grounds,* 786 F.2d 22 (1st Cir. 1986). The court held that the policy covered damages for the loss of use of tangible property even though that loss did not result from physical injury or destruction. *Libbey,* at 770. Some windows installed in a building failed and the owner sought compensation, *inter alia,* for the loss of use of the building. *Libbey,* at 768. The court simply held that the policy covered the loss of use of

*tangible property* even though the tangible property was not physically injured or destroyed. *Libbey.* Similarly, the other case upon which Guelich relies also involved a claim for loss of use of tangible property. *American Motorists Ins. Co. v. Trane Co.,* 544 F. Supp. 669 (W.D. Wis. 1982), *aff'd,* 718 F.2d 842 (7th Cir. 1983). *Trane* involved the failure of a device which resulted in the loss of use of a natural gas liquefaction plant. *Trane,* at 674–75. The court found that a property damage definition, very similar to the policy in *Libbey,* included loss of use to tangible property even though the property may not be physically injured or destroyed. *Trane,* at 693.

Both of these cases are factually distinguishable from the present case because of the type of injury suffered. In *Libbey* and in *Trane,* the parties claimed that tangible property had failed. Here, the claim is that intangible property—a view—has been lost. In light of this distinction, our decision in this case is not inconsistent with the analysis of those two cases.

Loss of use of a view does not constitute property damage as defined in the American policy. The view obstruction suit does not allege physical injury to tangible property. Thus, American had no duty to defend Guelich. The trial court properly granted summary judgment in favor of American.

Affirmed.

COLEMAN, C.J., and WINSOR, J., concur.